JAP:HLJ

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M10-1047**

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

XIN LIN,
     also known as "Xing Liu,"
SHI XIN LI,
     also known as "Johnny,"
PENG WANG,
WENHAI LUI,
JAI WEI XU, and
CHEN QING ZHANG,

            Defendants.

- - - - - - - - - - - - - - - X

C O M P L A I N T

(18 U.S.C. §§ 2 and 1203)

EASTERN DISTRICT OF NEW YORK, SS:

BRENDA L. COTTON, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

Upon information and belief, on or about and between September 7 and September 10, 2010, within the Eastern District of New York and elsewhere, the defendants XIN LIN, also known as "Xing Liu," SHI XIN LI, also known as "Johnny," PENG WANG, WENHAI LUI, JAI WEI XU, and CHEN QING ZHANG, together with others, did knowingly and intentionally seize, detain, threaten to kill, threaten to injure and continue to detain another person who is not a national of the United States in order to compel a third person

to do an act as an explicit condition for the release of the person detained.

(Title 18, United States Code, Sections 2 and 1203(a))

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.    I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately 25 years.    The  information  set  forth  herein  is  based  on  an investigation conducted by myself, other special agents of the FBI, and other law enforcement officers, as well as and the review of other evidence as set forth more fully below.

2.    On or about September 10, 2010, FBI agents located an individual who was being held hostage (the "HOSTAGE VICTIM") for $3,500,000 at or in an apartment in Queens, New York.   The HOSTAGE VICTIM is a Chinese national currently living in the United States. Prior to his recovery, the HOSTAGE VICTIM was last seen on or about the morning of September 7, 2010, when the VICTIM got into a taxi in Queens, New York.

3.    Later  that  day,  the  HOSTAGE  VICTIM'S  family, received a series of phone calls from unknown individuals demanding $3,500,000 for their son.   During the calls, the caller demanded

---

[1] Because this affidavit is submitted only to illustrate that probable cause exists to believe that the defendants committed certain crimes, all the facts known to me as a result of my investigation have not been included.

payment within 24 hours and indicated that if payment was not received they would kill the HOSTAGE VICTIM.

4.    On or about September 8, 2010, the HOSTAGE VICTIM's family received additional calls demanding $3,500,000 for the safe return of their son.  On or about September 10, 2010, the family received additional calls again demanding money in exchange for the release of their son.

5.    Using a recording of one of the ransom calls, the identity of the one of the callers was determined to be the defendant XIN LIN.  Based on this information, agents were also able to identify an associate of the defendant LIN's, the defendant SHI XIN LI, as well as a vehicle registered to the defendant LI, a grey BMW X5 (the "BMW").

6.    Surveillance was conducted in the area known to be frequented by the defendants LIN and LI.  On or about September 10, 2010, LI's BMW was located and surveillance was conducted of the vehicle in the vicinity of Brooklyn, New York.  While following the BMW, agents observed the car stop and two men exit the vehicle and begin running away from the vehicle while the BMW sped off in another direction.  The two men who exited the vehicle, later identified as the defendants PENG WANG and WENHAI LUI, as well as the driver of the BMW, the defendant LI, were then apprehended. When the car was searched the HOSTAGE VICTIM's mobile phone as well as a taser were recovered.  In addition, the HOSTAGE VICTIM's

passport was found in the possession of the men who had exited the vehicle.

7.   When questioned about the whereabouts of the HOSTAGE VICTIM, one of the apprehended men stated in sum and substance that he knew the HOSTAGE VICTIM was being detained by three other individuals at an apartment in Queens, New York. He also indicated that the other two men who had been in the BMW had been hired to participate in the abduction.

8.   On or about September 10, 2010, agents proceeded to the apartment in Queens where they believed the HOSTAGE VICTIM was being held. When they entered, they found the HOSTAGE VICTIM and the defendants LIN, CHEN QING ZHANG and JAI WEI XU present in the SUBJECT PREMISES. The defendants ZHANG and XU were in the front room of the apartment.

9.   The HOSTAGE VICTIM was found blindfolded, with duct tape over the blindfold, sitting in a bed in the rear bedroom of the SUBJECT PREMISES. The HOSTAGE VICTIM had blood on his face and was wearing a bloody shirt. The defendant LIN was present with the HOSTAGE VICTIM in the bedroom and was seated on the same bed. The defendant LIN also had a strip of duct tape over his eyes. When agents entered the bedroom, they identified themselves as FBI agents and secured both the HOSTAGE VICTIM and the defendant LIN. Agents asked which of the men was the HOSTAGE VICTIM, using the HOSTAGE VICTIM's true name. The HOSTAGE VICTIM identified himself

immediately and stated in sum and substance, while motioning to the defendant LIN, that the defendant LIN was the "ring-leader" and "bad-guy."

10.   Agents observed laces or ropes, a knife, and a laptop computer with what appeared to be headphones attached to it near the bed where the HOSTAGE VICTIM was located.   The HOSTAGE VICTIM was then taken to the hospital.

11.   The HOSTAGE VICTIM was later interviewed by agents. In sum and substance, the HOSTAGE VICTIM explained the following: on or about the morning of September 7, 2010, the defendant LIN contacted him via cell phone and asked him to meet for breakfast. The HOSTAGE VICTIM knew the defendant LIN socially and often picked up the tab after partying with the defendant LIN.   The HOSTAGE VICTIM and the defendant LIN met at a restaurant.   After eating, the defendant LIN invited the HOSTAGE VICTIM to visit a friend's bar.   When the two men arrived at the bar, they were invited into a VIP private room where four additional unidentified males were present.   One of the men approached the defendant LIN and pretended to punch him and stated in sum and substance, "You owe us money." The defendant LIN then fell to the ground.   Next, the four males punched and hit the HOSTAGE VICTIM and told him, in sum and substance, that he owed them money also, which was false.   The HOSTAGE VICTIM fell to the ground where one of the males used a taser weapon on him multiple times.   The HOSTAGE VICTIM stated that

he did not try to fight back because two of the men had knives. The assailants then took all of the HOSTAGE VICTIM's personal belongings, bound him with his shoelaces and blindfolded him. They led him to another room where they waited to take him outside. After unsuccessfully trying to carry the HOSTAGE VICTIM, the men placed an oversized garment on the HOSTAGE VICTIM to cover his bound hands and a hat to obscure the blindfold and forced him into a vehicle. While in the vehicle, despite being blindfolded, the HOSTAGE VICTIM was able to partially see, and recognized the defendant LIN to be seated in the front passenger seat.

12. The HOSTAGE VICTIM was then taken to another location where he was held. While at this location the HOSTAGE VICTIM was present when calls where placed to his mother. During one of the calls, an unidentified male placed a knife to his throat and stated in sum and substance, that he had to cry and beg for his life to his mother. Later HOSTAGE VICTIM was transported to another location.

13. While at the second location, on or about September 10, 2010, the defendant LIN entered the room the HOSTAGE VICTIM was held in. Again the defendant LIN posed as a victim and asked the HOSTAGE VICTIM in sum and substance whether he believed his mother would pay the ransom. He also asked the HOSTAGE VICTIM whether he would go to the police if he was released. The HOSTAGE VICTIM indicated that he would not.

14. After being advised of and waiving his <u>Miranda</u> rights, the defendant ZHANG made a statement in which he explained that he was promised to be paid $5000 by the defendant LIN in exchange for watching a man that LIN had tied up in the apartment.

15. The investigation also revealed that the apartment in which the HOSTAGE VICTIM was found had been rented on or about September 9, 2010, by individuals who allegedly wanted to rent the apartment for 5-10 days.

WHEREFORE, your deponent respectfully requests that the defendants XIN LIN, also known as "Xing Liu," SHI XIN LI, also known as "Johnny," PENG WANG, WENHAI LUI, JAI WEI XU, and CHEN QING ZHANG be dealt with according to law.

BRENDA L. COTTON
Special Agent
Federal Bureau of Investigation

Sworn to me this
11th day of September 2010

'OHORELSKY
'GE
EASTERN DISTRICT OF NEW YORK